## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JORDAN WIESMAN,**<br><br>*Plaintiff,*<br><br>v.<br><br>**STATE FARM FIRE AND CASUALTY COMPANY,**<br><br>*Defendant.* | **CIV-25-50-JD**<br><br>**Hon. Jodi W. Dishman** |

## PLAINTIFF'S REPLY IN SUPPORT OF
## RENEWED MOTION FOR REMAND

## I.    INTRODUCTION

State Farm asks this Court to deny remand by recharacterizing the Renewed Motion as a motion for reconsideration and then arguing Plaintiff fails to satisfy the applicable standard. That framing misses the mark. Subject-matter jurisdiction is never waived and can never be created by consent or inaction. *Frizzell v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 51142, at *1 (W.D. Okla. Jan. 10, 2006)(citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). A federal court has an independent, continuing duty to assure itself of jurisdiction, and this Court may—and should—revisit its earlier ruling whenever substantial doubt exists. *See Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 428 (2026) ("Federal courts 'are all of limited jurisdiction,' and their proceedings are erroneous, if the jurisdiction be not shown upon them.").

Even under the reconsideration framework State Farm invokes, Plaintiff satisfies every applicable ground: (1) *Hain* constitutes an intervening change in controlling law that illuminates the risk of proceeding without jurisdiction; (2) the Declaration of Jordan Wiesman and the May 2024 text exchange supply specific evidentiary facts that confirm the viability of Plaintiff's claims against Cottrill; and (3) the mounting consensus of federal-court remands and state-court denials of agent motions to dismiss demonstrates that denying remand here would work clear error and manifest injustice. State Farm's arguments to the contrary are unpersuasive.

1

## II.    ARGUMENT

### A.    The Court Has a Continuing Duty to Police Subject-Matter Jurisdiction.

State Farm's threshold argument—that the Renewed Motion must be evaluated solely under the reconsideration standard—fundamentally misapprehends the nature of jurisdictional challenges. Subject-matter jurisdiction "can never be forfeited or waived" and "may be raised at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 514 (2006). Moreover, a court has an independent obligation to determine that subject matter jurisdiction exists, even if the parties do not raise the issue. *See id.* at 514. Accordingly, even if reconsideration standards apply as an overlay, they cannot override the Court's independent obligation to satisfy itself of jurisdiction. And under those standards, *Hain*, the post-*Hain* remand authorities, and other evidence each independently warrant remand.

### B.    *Hain* Constitutes an Intervening Change in Controlling Law That Counsels Remand.

State Farm argues that *Hain* "did not address—much less alter—the Tenth Circuit's fraudulent-joinder framework." ECF No. 57 at 2. That argument is both too narrow and too convenient. Plaintiff does not contend that *Hain* formally abrogated the fraudulent-joinder doctrine. Rather, *Hain*'s unanimous holding materially changes the calculus a district court must employ when deciding whether to retain jurisdiction over a case from which a non-diverse defendant has been dismissed.

*Hain* holds that "[a] district court has never [been able to] create jurisdiction through its own mistakes," 607 U.S. at 431, and that an uncured jurisdictional defect at final

judgment requires vacatur—"regardless of how efficient it might be to leave the judgment in place." *See id.* at 432. These principles directly bear on the fraudulent-joinder inquiry because they confirm that (a) an erroneous dismissal of a non-diverse party does not create subject-matter jurisdiction; and (b) if the joinder analysis was wrong, the entire case— including any final judgment—must be vacated.

This is not, as State Farm suggests, a matter of mere judicial economy. It is a constitutional and statutory limitation on this Court's power to adjudicate this case. As Judge Wyrick recognized in *Richardson v. Allstate Veh. & Prop. Ins. Co.*, 2026 WL 526387, at *1 (W.D. Okla. Feb. 25, 2026), the fraudulent-joinder standard is "stringent" because of, among other things, the "risk of a post-merits reversal for lack of jurisdiction." *See id. Hain* dramatically illustrates this concern: the Palmquists tried the case to verdict, won nothing, and had the judgment vacated because the district court's joinder ruling was incorrect. *Hain*, 607 U.S. at 430.

State Farm's reliance on *Hain*'s statement that jurisdiction may be "cured" by properly dismissing a non-diverse party, ECF No. 57 at 9, begs the very question at issue. A dismissal "cures" the defect *only if it is correct. Hain*, 607 U.S. at 430-31. If the joinder determination was wrong—as Plaintiff maintains—no "cure" has occurred, and any subsequent judgment is vulnerable to vacatur. The question is therefore whether this Court can say with *complete certainty* that Plaintiff has no possibility of recovery against Cottrill. For the reasons below, it cannot.

3

### 1. Justice Thomas's Concurrence Is Persuasive and Reinforces Plaintiff's Position.

Plaintiff cites Justice Thomas' concurrence not as a mandate to abrogate fraudulent joinder, but as persuasive authority reinforcing that the merits-based analysis Plaintiff contends was conducted—assessing causal connection, evaluating the sufficiency of Plaintiff's claims, and weighing Plaintiff's factual allegations—is precisely the type of analysis that jurists view as exceeding the proper scope of a jurisdictional inquiry. *See Hain*, 607 U.S. at 437 (Thomas, J., concurring) ("Federal courts sitting in diversity likely *cannot dismiss nondiverse parties based on their view of the merits of the claims against those parties*.") (emphasis added).

State Farm's dismissal of the concurrence does not diminish this point. Even under existing Tenth Circuit precedent, the Court "may not pre-try the underlying issues" and "all factual and legal questions must be resolved in favor of Plaintiffs." *Richardson*, 2026 WL 526387, at *1. The concurrence simply casts light on a manifest principle underlying fraudulent joinder: this Court should not be conducting a merits analysis of Plaintiff's state-law claims.

### C.  State Farm Has Not Established Fraudulent Joinder with Complete Certainty.

State Farm's central merits argument is that Plaintiff received the replacement cost policy he requested, that his damages arise from claim adjustment—not procurement, and there is no causal connection between Cottrill's statements and Plaintiff's damages. ECF No. 57 at 10–11. This argument impermissibly resolves disputed factual and legal questions in State Farm's favor at the jurisdictional stage.

Plaintiff does not merely complain that State Farm denied his claim. He alleges that Cottrill:

- Promised full replacement cost coverage for his roof, knowing of Oklahoma's severe storm weather, and specifically confirmed Plaintiff had "replacement cost coverage for [his] roof subject to [his] $2,551 deductible" (*see* ECF No. 50-3, ¶5);

- Failed to inspect or verify the property's condition as required by State Farm's own underwriting guidelines (*see id.* ¶9);

- Failed to disclose roof defects, pre-existing conditions, hidden definitions, coverage restrictions, functional damage concepts, or the Wind/Hail Focus Initiative that would negate the promised coverage (*see id.* ¶¶9-10);

- Knew about State Farm's systematic Scheme to deny or underpay Oklahoma wind/hail roof claims but concealed it from Plaintiff (*see id.*); and

- Induced Plaintiff to purchase/renew a policy and submit a claim on said policy whose coverage was effectively illusory due to undisclosed limitations (*see id.* ¶11).

These allegations go far beyond claim handling. They describe an agent who made affirmative representations about coverage, failed to disclose material coverage-defeating conditions, and set up Plaintiff to be ambushed by a claim denial—all in furtherance of a systematic scheme. Whether those allegations ultimately prove true is a *merits* question. At the jurisdictional stage, "all factual and legal questions must be resolved in [Plaintiff's] favor." *Richardson*, 2026 WL 526387, at *3.

The Court's Order denying remand found the disclosures raised by Plaintiff "are all inherent or implied [and] Plaintiff does not identify any affirmative statements made by Cottrill[.]" ECF. No. 28 at 11. However, the May 2024 text exchange between Plaintiff

and Cottrill refutes that premise. When Plaintiff asked, "I was just making sure I have full roof replacement coverage correct?" Cottrill responded: "Hi, Jordan. You have replacement cost coverage for your roof subject to your $2,551 deductible." ECF No. 50-3, ¶5.

This is not an implication arising from the mere issuance of a policy. It is a direct, specific, written representation by Cottrill to Plaintiff confirming a particular scope of coverage—coverage that proved illusory when State Farm denied the claim. Under Oklahoma law, one who "volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth." *Uptegraft v. Dome Petroleum Corp.*, 1988 OK 129, ¶12, 764 P.2d 1350, 1353. At minimum, whether Cottrill's confirmation was a material misrepresentation that induced Plaintiff's reliance is a disputed question of Oklahoma law that cannot be resolved with "complete certainty" at the jurisdictional stage.

As this Court itself recognized in *Shamblin v. State Farm Fire & Cas. Co.*, No. CIV-26-102-JD (W.D. Okla. May 4, 2026), which was cited in Plaintiff's original Motion (ECF No. 50-4), an agent's direct statements to an insured can support a constructive fraud/negligent misrepresentation claim sufficient to defeat fraudulent joinder. *See* ECF No. 50-4 at 8 ("[Agent's] promise that State Farm would provide future coverage could serve as a basis for Plaintiffs' claim if made with the knowledge that State Farm would not provide coverage and with the intent to induce Plaintiffs...." In doing so, this Court found that State Farm had not established non-liability with complete certainty where the agent made representations about coverage. ECF No. 50-4 at 9. The same analysis applies here

with even greater force, given Cottrill's specific written confirmation of roof replacement cost coverage.

### 1.     Plaintiff's Declaration Is Properly Before the Court.

State Farm contends that Plaintiff's Declaration (ECF No. 50-3) "merely repackages" existing allegations and therefore provides no basis for reconsideration. ECF No. 57 at 12–13. This argument fails for two primary reasons. ***First***, State Farm cannot simultaneously invoke the right to look beyond the pleadings and then object when Plaintiff supplies evidentiary support through a sworn declaration. The declaration supplies specific facts—including the verbatim text exchange with Cottrill (ECF No. 50-3 at ¶5), Plaintiff's lack of experience in roofing or property and casualty insurance (*see id.* ¶7), his reliance on Cottrill's promises (*see id.* ¶8), the conclusions of other roofers that the roof required full replacement (*see id.* ¶14), and the fact that neither Cottrill nor State Farm ever communicated any coverage-precluding condition (*see id.* ¶¶9-11)—that are properly before the Court in assessing its continuing jurisdictional duty.

***Second***, the standard for re-examining jurisdiction is not identical to the standard for garden-variety reconsideration of a merits ruling. Even if some facts were available earlier, they are relevant now because the Court has a continuous obligation to satisfy itself that jurisdiction exists. The declaration confirms that Plaintiff's claims against Cottrill are not a sham—they are supported by specific factual allegations of reliance, misrepresentation, and concealment.

**D.      State-Court Orders Denying Agent Motions to Dismiss Are Highly Relevant.**

State Farm dismisses the numerous state-court orders denying captive-agent motions to dismiss as "inapposite" because they "apply Oklahoma's pleading standard—not the fraudulent joinder standard." ECF No. 57 at 2 n.2. This misses the point entirely.

Plaintiff does not offer these orders as rulings binding upon this Court. Rather, they are powerful evidence of how Oklahoma courts view these claims—and that evidence is directly relevant to the fraudulent-joinder inquiry. The primary question in the fraudulent joinder analysis is whether Plaintiff has "no possibility" of recovery against Cottrill in state court. *Montano v. Allstate Indem.*, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000). ***When no Oklahoma state district court hearing a Scheme-focused case has granted a captive agent's motion to dismiss***, it is impossible for State Farm to demonstrate with "complete certainty" that these claims are legally or factually foreclosed in state court.

State Farm cannot credibly claim that Plaintiff's claims are impossible as a matter of law when Oklahoma courts have repeatedly found them viable.

**E.      Post-*Hain* Authority Supports Remand.**

Since *Hain* was decided, federal courts in Oklahoma have repeatedly remanded Scheme-focused cases involving State Farm's captive agents. *See, e.g.*, *Richardson*, 2026 WL 526387; *Baugh v. State Farm*, 2026 WL 796371 (E.D. Okla. Mar. 4, 2026); *Shamblin v. State Farm Fire*, No. CIV-26-102-JD (W.D. Okla. May 4, 2026); *Mitchell v. State Farm Fire & Cas. Co.*, 2026 WL 1093365 (W.D. Okla. Apr. 22, 2026); *Towns v. State Farm Fire & Cas. Co.*, 2026 WL 973286 (W.D. Okla. Apr. 10, 2026). These remands—including

*Shamblin* by this very Court—confirm that State Farm cannot demonstrate fraudulent joinder with complete certainty.

State Farm acknowledges this split in authority but asks the Court to align with its earlier ruling. However, where sister courts in this district and elsewhere disagree on whether these claims survive fraudulent-joinder analysis, the split itself demonstrates that the issue cannot be resolved with "complete certainty." The heavy burden falls on State Farm, and a genuine split defeats that burden as a matter of law.

## III.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Renewed Motion for Remand and remand this case to the District Court of Oklahoma County, State of Oklahoma. This Court lacks subject-matter jurisdiction. Any judgment rendered without jurisdiction risks vacatur under *Hain* and its progeny, wasting the resources of both the Court and the parties. Remand is the only course consistent with the constitutional limits on federal jurisdiction, the stringent fraudulent-joinder standard, and this Court's own recent decision in *Shamblin*.

Respectfully submitted,

*s/ John Sanders*
Reggie N. Whitten, OBA #9576
Michael Burrage, OBA #1350
Hannah Whitten, OBA #35261
John S. Sanders, OBA #34990
Jake Denne, OBA #35097
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Telephone:   (405) 516-7800
Facsimile:    (405) 516-7859

9

*rwhitten@whittenburragelaw.com*
*mburrage@whittenburragelaw.com*
*bsonne@whittenburragelaw.com*
*hwhitten@whittenburragelaw.com*
*jsanders@whittenburragelaw.com*
*jdenne@whittenburragelaw.com*

James Warner, OBA No. 19593
**NIX PATTERSON, LLP**
512 N. Broadway, Suite 200
Oklahoma City, OK 73102
Office:       405.516.7800
Facsimile:   405.516.7859
*jwarner@nixlaw.com*

***Attorneys for Plaintiff***

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2026, the forgoing Motion was served on all parties of record by means of the Court's ECF system.

*/s/     John Sanders*